822 So.2d 716 (2002)
Brent L. MORGAN, Jr.
v.
LAFOURCHE RECREATION DISTRICT NO. 5 and Lafourche Parish Through the Lafourche Parish Council.
No. 2001 CA 1191.
Court of Appeal of Louisiana, First Circuit.
June 21, 2002.
*717 Kerry P. Camarata, Thibodaux, for Plaintiff/Appellant, Brent L. Morgan, Jr.
*718 Danna E. Schwab, Houma, for Defendants/Appellees, Lafourche Recreation District No. 5 and Lafourche Parish.
Carl T. Conrad, Houma, for Defendant/Appellee, American Tennis Courts, Inc.
Lloyd W. Hayes, New Orleans, for Defendant/Appellee, World Class Athletic Surfaces, Inc.
Before: CARTER, C.J., PARRO and CLAIBORNE,[1] JJ.
CARTER, C.J.
On September 26, 1998, Brent L. Morgan, Jr. injured his left knee while playing basketball at a public court in Schneider Park in Chackbay. Morgan sued Lafourche Recreation District No. 5 and Lafourche Parish through the Lafourche Parish Council (Lafourche), the operators of the park; American Tennis Courts, Inc. (American), the contractor who surfaced the basketball court where Morgan was injured; and World Class Athletic Surfaces, Inc. (World), the manufacturer of the product used to surface the court. Morgan contends that the court surface had an improper coefficient of friction, one suitable for tennis but not for basketball, which was a legal cause of his knee injury, and that Lafourche is liable for operating a dangerous premises and failing to warn of the dangers of playing basketball on the inappropriate surface. He further contends that American and World failed to warn of the danger of surfacing a basketball court with a product designed for tennis courts.
American and World moved for summary judgment. American also moved to exclude the testimony of plaintiffs expert, Alan R. Caskey. Lafourche filed a similar motion to strike Caskey as an expert witness. After a hearing, the trial court granted the motions but stated that Caskey would be
limited at any trial of this matter to offering testimony only in his stated field of expertise, Recreation and Park Administration ... [and] would be prohibited from offering any testimony as to the causative link between [plaintiff's injury] and the surface applied to the half-tennis/half-basketball court in question, as well as prohibited from offering any testimony as to legal causation between the injury allegedly sustained and the surfacing product selected by defendant, Lafourche ..., and applied to that surface by defendant, American ....
The trial court also granted the motions of American and World for summary judgment and dismissed plaintiff's suit against them. Plaintiff appeals.

LIMITATION ON CASKEY'S EXPERT TESTIMONY
Plaintiff contends the trial court erred in limiting Caskey's testimony. Plaintiff submitted Caskey's affidavit in opposition to the motions for summary judgment. Caskey set forth the following qualifications in his affidavit. He has masters and doctorate degrees in recreation and parks administration; he has designed, specified, and supervised the construction of over 300 tennis courts and over 200 basketball courts, including specifying the coefficient of friction; he holds numerous professional memberships and certifications; he has investigated personal injuries on basketball courts for both plaintiffs and defendants; he has testified as an expert nationwide on matters including the design, construction, *719 and operation of tennis and basketball courts, including the coefficient of friction; and he has read numerous publications regarding standards for playing surfaces and their friction characteristics. He further stated in the affidavit that he had personally examined the surface of the court in question and measured its coefficient of friction; that he found that surface to be inappropriate, unsuitable, and unsafe for a basketball court because the frictional forces between the basketball shoe and the court surface would not allow release when a player attempted to rotate around his planted foot, greatly increasing the risk of knee injury; that the instances of knee injury are dramatically higher if basketball is played on a court surface with a coefficient of friction of .8 rather than the usual.5; that the sand-grit mix specified by Lafourche possessed an unsafe high coefficient of friction that is known to cause an unnecessary increase in knee injuries; and that American should have known that the product it installed was unsuitable for its intended use and should have informed Lafourche that the surface could have been made appropriate by deleting the sand from the specifications.
American and Lafourche's motions to limit Caskey's testimony were virtually identical. Both alleged that Caskey was not qualified to testify "as to the chemical properties and characteristics of the athletic court resurfacing material, or whether said material was properly selected for use or applied to the athletic court in question." The trial court, in ruling on the motions to exclude Caskey's testimony, stated that Caskey was "obviously an expert in his field of sports administration and recreation, the design of sports complexes and probably included in that expertise is the discretion to choose surfaces on the places that would be installed in a recreation complex." The court further stated that at trial Caskey would be able to give expert testimony about the proper surface required, but that it would be beyond Caskey's expertise to answer the ultimate question of whether plaintiff would have avoided injury had another surface been used.[2]
When the trial court is faced with a proffer of expert scientific testimony, the court must determine at the outset whether the expert is proposing to testify to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. LSA-C.E. art. 702; Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, pp. 12-13 (La.2/29/00), 755 So.2d 226, 234. The United States Supreme Court explained in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), that this would entail "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." Louisiana has adopted the Daubert, standards for admissibility of expert opinion evidence at the summary judgment stage. Independent Fire, 99-2181, p. 14, 755 So.2d at 235.
Under the Louisiana Code of Evidence, an expert should be allowed to testify if his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." LSA-C.E. art. *720 702. Lafourche and American contend that only an engineer or physicist can competently address the "true meaning" of a coefficient of friction. Defendants have not deposed Caskey, but based on his affidavit, it appears he has extensive experience with selecting a surface with the proper coefficient of friction for a court surface. An expert may be qualified not only by his education, but by "knowledge, skill, experience, [and] training." Caskey's knowledge, skill, experience, and training, as set forth in his affidavit, qualify him to testify regarding the proper surface and, concomitantly, the effects of having an improper surface.
In our opinion, the trial court improperly excluded Caskey's proffered testimony regarding whether the surface coating used herein contributed to or caused plaintiff's injury. While an orthopedic surgeon or kinesiologist, as the trial court suggested, may be able to give more information at trial about the mechanics of the injury to plaintiffs knee, this should not prevent Caskey from being able to testify about the effects of using the wrong type of surface on a basketball court. We thus reverse the judgment of the trial court limiting Caskey's testimony.

WORLD'S MOTION FOR SUMMARY JUDGMENT
Plaintiff added World as a defendant in his second amended petition. He alleged that World failed to warn the users of its product of a known and reasonably discoverable danger, that it failed to test its product, and that its product was unreasonably dangerous. In the statement of uncontested and material facts World filed in support of its motion for summary judgment, World states that Lafourche listed World's product as an approved surfacing material in the bid specifications, that World had no involvement in the preparation of bid specifications, that it did not warrant to plaintiff or American that its product was suitable for a basketball court, and that this was the first lawsuit against World since it began marketing the product in 1988. World alleges that it did not sell the product to plaintiff or Lafourche; instead, its product was incorporated into an existing tennis court, and thus it had no duty to warn plaintiff or Lafourche of anything. World further alleges that neither American nor Lafourche ever contacted it regarding this project, that its product was delivered to American at its facility in Mobile, Alabama, and that it cannot be held liable to plaintiff for failure to warn since it had no opportunity to do so.
Plaintiff did not file a memorandum in opposition to World's motion. At the hearing on World's motion, plaintiffs counsel stated:
For the record, I have to oppose the motion filed by World Class; however, and you very seldom hear me say this, their motion is or could be considered to be meritorious, World Class was brought in simply because if I didn't bring them in the other defendants are going to point at the empty chair. Now, as a plaintiff I can't have that so I have to bring them in. If the Court dismisses them saying that they have no liability I'm protected.
Furthermore, plaintiff devoted only two paragraphs of his appellate brief to his claim against World. He argues simply that a manufacturer has a duty to warn against a reasonably anticipated use of its product that tends to cause injury and that a manufacturer should know if "people are being injured much more often when playing basketball on this surface." There is nothing in the record, however, to create a genuine issue of material fact that use as a basketball court surface was a reasonably *721 anticipated use of World's product or that any basketball player other than plaintiff had been injured when playing on a court surfaced with World's product. Thus, we affirm the trial court's grant of summary judgment dismissing World from this lawsuit.

AMERICAN'S MOTION FOR SUMMARY JUDGMENT
In his amended petition, plaintiff alleged that American failed to warn the user of its product of a known and reasonably discoverable danger, that American failed to adequately and sufficiently test its product, and that the product manufactured by American was unreasonably dangerous. American moved for summary judgment on the basis that it was immune from liability under LSA-R.S. 9:2771, which provides that "[n]o contractor shall be liable for ... defects in any work constructed... by him if he constructed ... the work according to plans or specifications furnished to him which he did not ... cause to be made and if the ... defect was due to any fault or insufficiency of the plans or specifications." In support of its motion, American provided the affidavit of Michael Davis, its construction foreman who personally oversaw this project, who stated that the basketball/tennis court was resurfaced "in strict accordance and compliance with the specifications for the resurfacing project, supplied to him by" Lafourche.
The trial court did not specifically address American's contractor's-immunity argument in ruling on the motion for summary judgment. Instead, the trial court, after finding Caskey unqualified to testify that this surface presented an unreasonable risk of harm or that the surface may have caused plaintiff's injury, focused on plaintiff's inability to carry his "tremendous burden of proof." Since we have found Caskey was qualified to give an opinion on those issues, we will direct our attention to American's original argument.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966B. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sandidge v. Sandidge, 2000-2157, p. 3 (La.App. 1st Cir.12/28/01), 804 So.2d 912, 914.
In general, a contractor owes third parties a duty to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations. Cormier v. Honiron Corp., XXXX-XXXX, p. 4 (La.App. 3d Cir.9/27/00), 771 So.2d 193, 197. A contractor, however, is not the guarantor of the sufficiency of plans and specifications drawn by another, and if it complies with those plans and specifications, it is entitled to immunity under LSA-R.S. 9:2771. It cannot rely blindly on plans and specifications, however. To avoid liability, the contractor must prove either that the condition created was not hazardous or that it had no justifiable reason to believe that its adherence to the plans and specifications created a hazardous condition. Id.; Bernard v. State, 93-1376, p. 10 (La.App. 3d Cir.6/1/94), 640 So.2d 694, 700, writ denied, 94-1814 (La.10/14/94), 643 So.2d 165.
Louisiana appellate courts have extended the statutory immunity of LSA-R.S. *722 9:2771 to third-party tort claims. Richard v. State, 610 So.2d 839, 840 (La. App. 1st Cir.1992), writ denied, 614 So.2d 1264 (La.1993). Proof that either the situation created was not hazardous or that the contractor had no justifiable reason to believe a hazardous situation was being created is an essential element of the contractor's defense under LSA-R.S. 9:2771. Id. at 841. Summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized. The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. King v. Stranco, Inc., 2000-2003, p. 2 (La.App. 1st Cir.11/9/01), 818 So.2d 48. Since the contractor has the burden of proving the elements of the contractor's immunity defense under LSA-R.S. 9:2771, summary judgment herein was proper only if American introduced sufficient undisputed evidence to satisfy its burden of proving this essential element. See Cormier, 771 So.2d at 197; Richard, 610 So.2d at 841.[3]
It is undisputed that Lafourche provided the plans and specifications and that American followed them. American did not attempt, however, to prove that it was unaware that it was hazardous to install a tennis surface on a court that would be used for basketball. Because proof of this essential element of American's defense is absent, the grant of summary judgment in favor of American was improper and must be reversed.

CONCLUSION
For the foregoing reasons, the judgment of the trial court limiting Caskey's testimony is reversed; the judgment of the trial court granting summary judgment in favor of World Class Athletic Surfaces, Inc., is affirmed; and the judgment of the trial court granting summary judgment in favor of American Tennis Courts, Inc. is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed one-half to plaintiff and one-half to American Tennis Courts, Inc.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Hon. Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We note that, by restating plaintiff's burden of proof in these terms, the court seems to have imposed on plaintiff the nearly impossible task of proving a negative. The ultimate issue is not whether plaintiff would have avoided injury had another surface been used; rather, whether this surface presented an unreasonable risk of harm to this particular plaintiff and was an actual cause in fact of his injury.
[3] We are aware that the Fourth Circuit Court of Appeal held in Rosato v. La. Dept. of Transp. & Dev., 97-2543, pp. 10-11 (La.App. 4th Cir.5/27/98), 714 So.2d 862, 867, writ denied, 98-1739 (La.10/9/98), 726 So.2d 33, that in a summary judgment situation it is incumbent upon the plaintiff to show there is a material issue of material fact with respect to whether the contractor had reason to believe that working in compliance with the plans and specifications would create a hazardous condition. We are, however, constrained to follow the decision of this circuit in Richard v. State.